IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STACY A.,

              Plaintiff,

    v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

            Defendant.

Case No. 17 C 6581

Magistrate Judge Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

Plaintiff Stacy A.[1] seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). Stacy moves the Court to reverse and remand the ALJ's decision, and the Commissioner asks for its affirmance. For the reasons set forth below, the ALJ's decision is reversed and this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## I. BACKGROUND

Stacy was born on March 31, 1961 and graduated from high school in 1979. (R. 48, 206, 241). She has previously worked as a bank teller, head teller, personal banker, and diet clerk at a hospital. *Id.* at 72, 265-69. In March 2007, while working as a bank teller, Stacy injured her lower back lifting a bag of quarters weighing approximately 50 pounds. *Id.* at 48-49, 232. Despite her injury, she continued to work until December 2008. *Id.* at 48, 265. Stacy testified that she stopped working at this time because she had to be "stress-free" and "off all meds" so that she did not have

---

[1]     Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by her first name and the first initial of her last name or alternatively, by her first name.

a drug intolerance before undergoing back surgery. *Id.* at 48. Stacy underwent back surgery in February 2009. *Id*. at 426.

In October 2014, Stacy filed a DIB application alleging that she became disabled and unable to work on November 1, 2008 due to post-lumber laminectomy syndrome, failed back syndrome, left leg pain, anxiety and depression, sarcoidosis, and sleep problems. (R. 97, 126, 240). After Stacy's application was denied initially and upon reconsideration, an administrative law judge ("ALJ") held a hearing. *Id.* at 38-79, 97, 117, 122-31. Stacy, represented by counsel, testified, as did a vocational expert ("VE"). *Id.* at 38-40, 45-77.

On March 22, 2017, the ALJ issued a decision denying Stacy's DIB claim. (R. 14-37). At the outset, the ALJ determined that Stacy was last insured as of December 31, 2014 (the "date last insured" or "DLI"). *Id.* at 19. Thus, the relevant time period for the ALJ's disability analysis was from November 2008 to December 2014. *See McHenry v. Berryhill*, 911 F.3d 866, 869 (7th Cir. 2018). Following the Social Security Administration's five-step analysis for evaluating disability, the ALJ found that Stacy had not engaged in substantial gainful activity from her alleged onset date through her date last insured (step one). She next determined that Stacy suffered from the following severe impairments: spine disorders, sarcoidosis, left sacroiliac joint dysfunction and trochanteric bursitis, anxiety disorders, and affective disorders (step two). (R. 19). The ALJ found, though, that none of these impairments met or medically equaled the severity of a listed impairment (step three). *Id.* at 19-21.

The ALJ then concluded that Stacy retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with several additional restrictions. (R. 21). Specifically, Stacy could lift and carry up to twenty pounds occasionally and ten pounds frequently; she could sit for up to six hours and stand or walk for up to six hours during the

workday; she could only occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; she could never climb ladders or scaffolds; she had to avoid concentrated exposure to unprotected heights, moving mechanical parts, dust, odors, fumes, pulmonary irritants, and extreme cold; and she would be off-task up to ten percent of the time during an eight-hour workday. (R. 21). Given this RFC, the ALJ determined that Stacy could perform her past relevant work as a bank teller, head teller, or personal banker (step four). *Id.* at 28-29. Based on this step-four finding, the ALJ found that Stacy was not disabled. *Id.* at 29. The Appeals Council denied Stacy's request for review on July 13, 2017, leaving the ALJ's March 22, 2017 decision as the final decision of the Commissioner. *Id.* at 1-6; *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## II. DISCUSSION

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a sequential five-step inquiry, asking (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the claimant's impairment meet or equal an impairment specifically listed in the regulations? (4) Is the claimant unable to perform a former occupation? and (5) Is the claimant unable to perform any other work in the national economy? *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than

step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski*, 760 F.2d at 162 n.2.

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *See Villano*, 556 F.3d at 562; *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In reviewing an ALJ's decision, the Court may "not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the" ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and her conclusions. *See Steele v. Barnhart*, 290 F.3d 936, 938, 941 (7th Cir. 2002) (internal citation and quotations omitted); *see also Fisher v. Berryhill*, 2019 WL 644219, at *5 (7th Cir. Feb. 15, 2019) (explaining that the "substantial evidence" standard requires the building of "a logical and accurate bridge between the evidence and conclusion"). Moreover, when the ALJ's "decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

The ALJ found Stacy not disabled at step four of the sequential evaluation process because she retained the RFC to perform her past relevant work as a bank teller, head teller, or personal banker. Stacy challenges the ALJ's non-disability finding on three grounds. First, she contends that the ALJ erred in evaluating the opinion evidence in the record. Second, she asserts that the ALJ improperly assessed her subjective symptom allegations. Third, she claims that the ALJ's RFC and hypothetical questions to the VE are not supported by substantial evidence. As explained

below, the Court concludes that the ALJ reversibly erred in evaluating several opinions. The Court also concludes that the ALJ's RFC determination and hypothetical question to the VE regarding Stacy's mental limitations are not supported by substantial evidence. Because the ALJ's decision is overturned on these bases, the Court need not reach Stacy's additional arguments for remand.

## A. Evaluation of the Opinion Evidence

The Court first addresses Stacy's contention that the ALJ improperly evaluated several opinions that addressed her functional limitations. An ALJ must consider every opinion in the record, including opinions from both "acceptable" and "not acceptable" medical sources. *See* 20 C.F.R. § 404.1527(b), (c), (f)(1); SSR 06-03p, 2006 WL 2329939, at *1-3 (Aug. 9, 2006) (rescinded for claims filed on or after March 27, 2017 by SSR 96-2p, 2017 WL 3928298 (March 27, 2017)). Treating physicians, physicians who examine but do not treat a claimant, and non-examining state agency consultants are acceptable medical sources, whereas nurse practitioners and certified athletic trainers are non-acceptable medical sources. *See* 20 C.F.R. § 404.1502 (June 13, 2011 to Mar. 26, 2017); SSR 06-03p, 2006 WL 2329939, at *1-2 (Aug. 9, 2006).

Under the regulation in effect when Stacy filed her DIB application, the ALJ must give a treating physician's opinion "controlling weight if it is well supported by medical findings and is consistent with other evidence in the record." *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018); *see* 20 C.F.R. § 404.1527(c)(2). If an ALJ does not give controlling weight to a treating physician's opinion, she still must decide how much weight to give the opinion. *Campbell*, 627 F.3d at 308. Social Security regulations require the ALJ to evaluate all non-controlling opinions— even opinions from "not acceptable" medical sources—using the following factors: (1) the examining relationship; (2) the treatment relationship, including the frequency of examination and the length, nature, and extent of the relationship; (3) the extent to which relevant evidence supports

the opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's specialty in the relevant area; and (6) any other factors that validate or contradict the opinion. *See Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014); *Phillips v.* Astrue, 413 Fed.Appx. 878, 884 (7th Cir. 2010) ("In deciding how much weight to give opinions from these 'other medical sources,' an ALJ should apply the same criteria listed in § 404.1527(d)(2)."); 20 C.F.R. § 404.1527(c), (f)(1). "When controlling weight is not given [to a treating physician's opinion], an ALJ must offer 'good reasons' for doing so, after having considered [the regulatory factors]." *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). In considering opinions from "other sources," the ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 404.1527(f)(2); SSR 06-03p, 2006 WL 2329939, at *6. Ultimately, the ALJ must "minimally articulate h[er] reasons for crediting or rejecting evidence of disability" and build an "accurate and logical bridge" between the evidence and her conclusion. about the weight she gives to an opinion. *See Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) (internal quotations omitted); *Clifford*, 227 F.3d at 870, 872.

The record in this case contains opinions from both "acceptable" and "not acceptable" medical sources: physicians and a nurse practitioner who treated Stacy for extended periods of time; physicians and a certified athletic trainer ("ATC") who examined Stacy on one occasion; and state agency consultants who reviewed Stacy's medical records but did not examine her. On appeal, Stacy challenges the ALJ's evaluation of a number of these opinions. The Court finds that the ALJ reversibly erred in evaluating three opinions: (1) the December 2014 opinion of certified athletic trainer John Connell, (2) the January 2015 opinion of Matthew Ross, M.D., and (3) the

August 2016 questionnaire completed by Gary Koehn, M.D., Ph.D., and nurse practitioner ("NP") Marcia Smith. Because these errors require remand, the Court need not address the ALJ's assessment of the other opinions in the record.

### 1. Mr. Connell's December 2014 Opinion

In December 2014, John Connell, ATC, CWcHP (Certified Workers' Compensation Healthcare Provider), and KEY Functional Assessment Specialist at ATI Physical Therapy, performed a Functional Whole Body Assessment of Stacy. (R. 1094-1100). Mr. Connell reported that Stacy demonstrated functional capabilities at the sedentary to light physical demand level with occasional chair-to-floor and desk-to-chair lifting of 14.8 pounds and occasional above-shoulder lifting of 17 pounds. *Id.* at 1094-95. He recommended that Stacy be restricted to occasional bending/stooping, stair climbing, kneeling, squatting, and crouching. *Id.* Mr. Connell further recommended that Stacy be limited to walking short distances frequently, for up to 3 to 4 hours total; standing for 35 minutes at a time, for up to 4 hours total; and sitting for 60 minutes at a time, for up to 6 hours total. *Id.* at 1095. Mr. Connell also opined that Stacy could not return to her previous job as a bank teller. *Id.* at 1094.

The ALJ gave Mr. Connell's December 2014 opinion "partial weight" because: (1) Mr. Connell was not an acceptable medical source; (2) "the ultimate decision as to whether an individual may return to past relevant [work] is reserved to the Commissioner"; and (3) Mr. Connell based his report on a single assessment. (R. 26-27). The ALJ further noted that subsequent medical evidence (a November 2015 note from Dr. Ross) indicated that Stacy's chronic low back pain was likely muscular in nature. *Id.* at 27 (citing R. 2532).

The ALJ improperly evaluated Mr. Connell's opinion. Regarding the first reason, the ALJ did not err in relying on Mr. Connell's status as an "other source" as one factor in her overall

evaluation of his opinion. SSR 06-03p, at *5 ("The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' 'are the most qualified health care professionals.'"). However, the additional reasons cited by the ALJ provide an insufficient basis for giving partial weight to Mr. Connell's opinion.

Second, the ALJ mistakenly believed that Mr. Connell's opinion regarding Stacy's inability to return to her past work was a conclusion reserved for the Commissioner. *See Knapp v. Berryhill*, 741 Fed. Appx. 324, 327 (7th Cir. 2018) (finding that the ALJ erroneously discounted a medical opinion that the claimant was unable to work based on the mistaken view that this issue was reserved to the Commissioner). Whether a claimant ultimately qualifies for disability benefits is a legal determination reserved for the ALJ, but an opinion about whether the claimant can return to work, like Mr. Connell's, is not an improper legal conclusion which can be ignored. *See Lambert*, 896 F.3d at 776; *Knapp*, 741 Fed. Appx. at 327. To the contrary, an ALJ must consider opinions that address a claimant's ability to work, as they are relevant to making an RFC determination. *Lambert*, 896 F.3d at 776; *Knapp*, 741 Fed. Appx. at 327.

Third, the ALJ's decision to give Mr. Connell's opinion partial weight because he examined Stacy only one time was error, given that she gave "great weight" to the opinions of state agency physicians Calixto Aquino, M.D., and Henry Rohs, M.D., who never examined Stacy. (R. 26, 90-93, 109-11). Addressing a similar situation, the Seventh Circuit recently found that an ALJ wrongly discounted an examining psychologist's opinion for being based on a one-time examination when, at the same time, the ALJ gave "great weight" to the opinion of a non-examining physician. *Paul v. Berryhill*, 2019 WL 643261, at *3 (7th Cir. Feb. 15, 2019). As the

Seventh Circuit in *Paul* explained, the opinion of an examining source generally receives more weight than the opinion of a non-examining source, and a conclusion to the contrary requires a good explanation. *Id.*; *see* 20 C.F.R. § 404.1527(c)(1). Here, the ALJ did not give any explanation, let alone a good one, as to why the frequency of examination should serve as a basis to discount the opinion of Mr. Connell, who did examine Stacy, but not to discount the opinions of the state agency physicians who did not examine Stacy.

Fourth, the ALJ failed to explain why Dr. Ross's November 2015 note supported her decision to give less weight to Mr. Connell's opinion. (R. 27). Indeed, how the nature of Stacy's low back pain (whether muscular or otherwise) would affect Mr. Connell's assessment of Stacy's functional abilities is not apparent. Without such an explanation, the Court has no idea why the ALJ believed that Dr. Ross's November 2015 note provided a basis for discounting Mr. Connell's opinion. *See Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ . . . must adequately articulate his analysis so that [a reviewing court] can follow his reasoning[.]").

Lastly, the ALJ should have evaluated Mr. Connell's opinion using the factors in Section 404.1527(c). *See* 20 C.F.R. § 404.1527(f)(1) (opinions from medical sources who are not acceptable medical sources will be considered "using the same factors as listed in paragraph (c)(1) through (c)(6) in this section"). The ALJ sufficiently addressed the first two factors by noting that Mr. Connell's opinion was based on a single assessment. (R. 27). The ALJ also noted Mr. Connell's specialty as an ATC, CWcHP, and Functional Assessment Specialist. *Id.* at 26. The ALJ did not, however, discuss the remaining factors such as types of tests performed, supportability, and consistency. Without some recognition and discussion of these factors, the Court is unable to conclude that the ALJ properly evaluated Mr. Connell's opinion and assigned it its due weight.

Furthermore, the ALJ's failure to properly evaluate Mr. Connell's December 2014 opinion is not harmless. "An error is harmless only if we are convinced that the ALJ would reach the same result on remand." *Lambert*, 896 F.3d at 776. If the ALJ gives more weight to the December 2014 opinion, she might formulate a more restrictive RFC by adopting Mr. Connell's assessments of Stacy's lifting capability (14.8-17 pounds occasionally), standing capability (35 minutes at a time, for up to 4 hours during the day), sitting capability (60 minutes at a time), and walking capability (frequent short-distance walks, for up to 3 to 4 hours during the day). (R. 1095; *compare with id.* at 21). Such an RFC could change the VE's opinion and the ALJ's determination about whether Stacy could perform her past work or other work. Thus, the Court is not convinced that a re-evaluation of Mr. Connell's December 2014 opinion would lead to the same non-disability finding, and remand is required so that the ALJ can reconsider this opinion. In re-evaluating Mr. Connell's opinion on remand, the ALJ shall discuss and be guided by the factors set forth in 20 C.F.R. § 404.1527(c).

### 2. Dr. Ross's January 2015 Opinion

From February 2012 through November 2015, Dr. Matthew Ross, a neurosurgeon, treated Stacy for her low back and left leg pain. (R. 256, 1087-93, 1104-06, 1181-82, 2532). During this time, Dr. Ross also recommended that Stacy undergo physical therapy. *Id.* at 1091, 1093. Between October 2012 and November 2014, Stacy underwent multiple rounds of physical therapy. *Id.* at 2466-78, 2486-89, 2491-92, 2494-95, 2516-17. Dr. Ross signed off on the evaluation and progress notes from Stacy's physical therapy visits, often noting that he had no revisions to the plan of care reflected in the notes. *Id.*

Dr. Ross also examined Stacy numerous times. (R. 1087-93, 1104-06, 1182, 2532). At one such examination in January 2015, Dr. Ross noted Stacy's examination results, some of the results

from her December 2014 evaluation with Mr. Connell, and the results of a lumber spine x-ray Stacy had brought with her to the examination. *Id.* at 1182. Dr. Ross opined that Stacy was "at maximum medical improvement." He released her back to work at the sedentary level, opining that she could lift up to 15 pounds and "should be allowed to vary her position from sitting to standing or vice versa as needed." *Id.* Dr. Ross stated that these restrictions should be considered permanent. *Id.* at 1181-82.

Although the ALJ acknowledged that Dr. Ross was Stacy's treating physician, she found that his January 2015 opinion was entitled to "only partial weight" because it was not "consistent with the evidence as a whole." (R. 27). The ALJ further determined that Dr. Ross's opinion relied "heavily upon Mr. Connell's assessment and the claimant's subjective reports." *Id.* The ALJ recited some of Dr. Ross's January 2015 examination findings—normal gait, deep knee bending performed with good strength, full motor strength, and "modestly restricted" forward flexion—but she did not elaborate on the significance of these findings or how they factored into her evaluation of Dr. Ross's opinion. *Id.*

The ALJ failed to build the requisite accurate and logical bridge between the evidence and her decision to give Dr. Ross's January 2015 opinion only partial weight. *See Lambert*, 896 F.3d at 774; *Aurand*, 654 Fed. Appx. at 838. Because Dr. Ross was a treating physician, his opinion was entitled to controlling weight unless it was not "well supported by medical findings" or it was inconsistent "with other evidence in the record." *See Gerstner*, 879 F.3d at 261; 20 C.F.R. § 404.1527(c)(2); *see also Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) ("[m]edical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence."). If an ALJ discounts a treating physician's opinion because it is inconsistent with the evidence, "she must explain the inconsistency." *Frobes v. Barnhart*, 467 F. Supp. 2d 808, 819 (N.D. Ill. 2006). Here,

the ALJ did not explain the purported inconsistencies between Dr. Ross's January 2015 opinion and the "evidence as a whole." (R. 27). Although the ALJ identified certain results from Dr. Ross's accompanying examination, she never explained if or why these results were necessarily inconsistent with Dr. Ross's opinion. *Id.* Since the ALJ did not explain the purported inconsistencies between Dr. Ross's January 2015 opinion and the evidentiary record, the Court cannot "understand the link between the evidence and the ALJ's decision." *Enuenwosu v. Berryhill*, 2017 WL 2684092, at *6 (N.D. Ill. June 21, 2017) (noting that "[w]ithout such a logical bridge, the Court cannot trace the path of the ALJ's reasoning").

The ALJ's finding that Dr. Ross "appeared to rely heavily upon Mr. Connell's assessment and the claimant's subjective reports" are also not "good reasons" for giving Dr. Ross's January 2015 opinion less than controlling weight. *See Campbell*, 627 F.3d at 306. Because the ALJ erred in evaluating Mr. Connell's assessment, this reason for discounting Dr. Ross's opinion is not supported by substantial evidence. Moreover, although an ALJ may discount a treating physician's opinion that is based solely on the claimant's subjective reports, it is unclear why the ALJ believed that Dr. Ross's January 2015 opinion fell into this category. *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008). The note containing Dr. Ross's opinion acknowledged a few complaints from Stacy about soreness and pain, but the rest of the note discussed objective evidence, such as Mr. Connell's functional assessment,[2] the results of Stacy's physical examination that day, and an x-ray that Stacy brought with her to the examination. (R. 1182); *Barrett v. Barnhart*, 355 F.3d 1065,

---

[2]     Mr. Connell's Functional Whole Body Assessment appears to be akin to a functional capacity evaluation ("FCE"), which is a "battery of physical tests that assesses whether an injured employee is able to return to work and in what capacity." *Goetzke v. Ferro Corp.*, 280 F.3d 766, 770 (7th Cir. 2002). An FCE is objective evidence. *See Hall v. Berryhill*, 906 F.3d 640, 643 (7th Cir. 2018) (characterizing an FCE as "relevant objective evidence"). Additionally, Mr. Connell stated that the Assessment was a "valid" representation of Stacy's physical capabilities "based upon the objective data collected and the formulas using that data" even though the report "contain[ed] the patient/client's pain reports and pain behaviors." (R. 1094, 1100).

1067 (7th Cir. 2004) (where a physical therapist "based her evaluation on physical tests and observation, not just on what [the claimant] told her," the ALJ's decision to give no weight to the therapist's report because the claimant exaggerated her condition to the therapist was arbitrary). Furthermore, Dr. Ross had examined Stacy on numerous previous occasions, and he had monitored her progress during multiple courses of physical therapy. (R. 1087-93, 1104-06, 2466-78, 2486-89, 2491-92, 2494-95, 2516-17). With this level of involvement and objective evidence, the ALJ did not adequately explain how Dr. Ross's acknowledgement of a few of Stacy's subjective complaints undermines his opinion.

Alternatively, even if the ALJ had offered good reasons for giving Dr. Ross's January 2015 opinion only partial weight, she still erred by doing so "without considering [the] relevant regulatory factors under 20 C.F.R. § 404.1527(c)." *Gerstner*, 879 F.3d at 263. For example, by January 2015, Dr. Ross had treated Stacy for almost three years, had examined her ten times, and had monitored her progress during multiple courses of physical therapy. (R. 1087-93, 1104-06, 1181-82, 2466-78, 2486-89, 2491-92, 2494-95, 2516-17). Dr. Ross is also a neurosurgeon who appears to specialize in spine and back issues. *See generally* Midwest Neurosurgery & Spine Specialists, http://www.mnss.net/ (last visited April 16, 2019). The ALJ did not discuss any of these facts, which all warrant giving Dr. Ross's January 2015 opinion more weight. *See* 20 C.F.R. § 404.1527(c)(2), (5).

The ALJ's erroneous assessment of Dr. Ross's January 2015 opinion is not harmless. If the ALJ gives more weight to Dr. Ross's opinion, her RFC determination might limit Stacy to lifting only 15 pounds (as opposed to 20 pounds) and allow her to alternate between sitting and standing as needed. (R. 1181-82). With this more restrictive lifting limitation and allowance for an at-will sit/stand option, Stacy might not be able to perform her past work or other work. Thus,

the Court is not convinced that a re-evaluation of Dr. Ross's January 2015 opinion would lead to the same non-disability finding on remand. *See Lambert*, 896 F.3d at 776.

For these reasons, substantial evidence does not support the ALJ's decision to afford only partial weight to Dr. Ross's January 2015 opinion, and remand is required so that the ALJ can reconsider this opinion. *See Gerstner*, 879 F.3d at 263. On remand, the ALJ shall consider whether to give Dr. Ross's January 2015 opinion controlling weight. If the ALJ decides not to do so, she must support that decision with good reasons and an accurate and logical bridge between the evidence and her decision. Furthermore, if the ALJ does not give Dr. Ross's opinion controlling weight, she should determine the amount of weight to give it by discussing and considering the factors set forth in 20 C.F.R. § 404.1527(c). *See id.*; *Scrogham*, 765 F.3d at 697-98.

### 3. Dr. Koehn's and Nurse Practitioner Smith's August 2016 Questionnaire

By October 2012 at the latest,[3] Stacy was seeing Dr. Gary Koehn, a pain management specialist, for her back and left leg pain, as well as depression. (R. 246, 313, 1385, 2533-35). From October 2012 through the end of 2015, Stacy saw Dr. Koehn between fifteen and twenty times. *Id.* at 2533-90. Stacy continued to present to Dr. Koehn's practice in 2016, although on these occasions she primarily saw NP Marcia Smith, who worked with Dr. Koehn. *Id.* at 1342-43, 2591-2621.

In August 2016, a few weeks after Stacy's most recent visit, Dr. Koehn and NP Smith completed a "pain assessment" questionnaire. (R. 1379-85, 2614-17). They opined that due to her chronic lower back pain, Stacy could sit or stand/walk for less than an hour in an eight-hour workday and could "never/rarely" lift and carry five to ten pounds. *Id.* at 1379, 1381, 1383. Dr.

---

[3] Stacy, Dr. Koehn, and NP Smith reported that the relationship began in February 2010, but it appears that the earliest progress note from Dr. Koehn or NP Smith in the record is from October 2012. (R. 313, 1385, 2533-35); *see also* (R. at 1343) (statement from NP Smith that Stacy had been Dr. Koehn's patient since 2011).

Koehn and NP Smith also opined that it was medically necessary for Stacy to avoid continuous sitting during the workday, as she needed to rise from a seated position three times every hour and would have to wait five to ten minutes before sitting back down. *Id.* at 1383. According to Dr. Koehn and NP Smith, Stacy's pain, fatigue, or other symptoms would be severe enough to interfere with her attention and concentration for one-third to two-thirds of the workday. *Id.* at 1384. Stacy would also need to take a break lasting 10-15 minutes every two hours, and she would be absent from work two to three times every month because of her impairments or treatment. *Id.* at 1384-85. Dr. Koehn and NP Smith expressly noted that they believed the symptoms and related limitations detailed in the questionnaire had been present since February 2010. *Id.* at 1385.

The ALJ gave Dr. Koehn's and NP Smith's August 2016 questionnaire "little weight." (R. 27). Because the questionnaire included the opinion of a treating physician, Dr. Koehn, the ALJ had to give "good reasons" for not giving it controlling weight.[4] *Campbell*, 627 F.3d at 306. The ALJ did not do so here.

First, the ALJ stated that the questionnaire was completed, at the request of Stacy's attorney, "about twenty months after [Stacy's] date last insured with no indication that [her] counsel requested that Dr. Koehn limit his assessment to [Stacy's] functional limitations to the relevant period." (R. 27). As an initial matter, if the ALJ discounted the August 2016 questionnaire because it was completed at the request of Stacy's attorney, this was improper. *See Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("[T]he fact that relevant evidence has been solicited by the claimant or her representative is not a sufficient justification to belittle or ignore that evidence."). Indeed, as the *Punzio* court indicated, how else can a claimant carry her burden to

---

[4]     Although the August 2016 questionnaire was signed by both Dr. Koehn and NP Smith, the Commissioner does not argue that NP Smith's signature diminishes the weight to be given to the questionnaire. (Doc. 19, at 8-9). To the contrary, the Commissioner, as the ALJ did in her decision, characterizes the questionnaire as reflecting only Dr. Koehn's assessment. *Id.*; (R. 27-28).

submit "medical evidence establishing her impairments and her residual functional capacity . . . other than by asking her doctor to weigh in?" *Id.*

More importantly, the ALJ incorrectly read the August 2016 questionnaire as failing to request an assessment of Stacy's functional limitations during the relevant period. *See Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) (explaining that the ALJ's refusal to give controlling weight to a treating psychiatrist's opinion was "not supported by substantial evidence" because it was based on a misinterpretation of the evidence). The questionnaire expressly asked if the symptoms and limitations described therein applied as far back as December 6, 2008, which is a month after Stacy's alleged disability onset date of November 1, 2008. (R. 97, 1385). Although Dr. Koehn and Ms. Smith replied that they did not, they reported that Stacy's symptoms and limitations were present as of February 2010. *Id.* at 1385. The Commissioner acknowledges that "Dr. Koehn reported that plaintiff's limitations applied as of February 2010." (Doc. 19, at 8).

The administrative record does not appear to contain medical records evidencing treatment from Dr. Koehn going back as far as February 2010, but the medical records do show treatment beginning in October 2012, which is still more than two years before Stacy's December 31, 2014 DLI. *Id.* at 19, 2533-35. Thus, substantial evidence does not support the ALJ's finding that the August 2016 questionnaire did not address Stacy's symptoms and limitations during the relevant period. While Dr. Koehn and NP Smith did not expressly "limit" their assessment to Stacy's pre-DLI symptoms and limitations, such a limitation was not necessary for their questionnaire to be relevant. *See Halvorsen v. Heckler*, 743 F.2d 1221, 1225-26 (7th Cir. 1984) (explaining that "medical evidence from a time subsequent to a certain period is relevant to a determination of a claimant's condition during that period"); *Million v. Astrue*, 260 Fed. Appx. 918, 921-22 (7th Cir.

2008) (explaining that post-DLI medical records were relevant to the extent "they shed light on [the claimant's] impairments and disabilities from the relevant insured period").

Second, the ALJ speculated that Stacy's development of a right shoulder impairment after the DLI "may have influenced Dr. Koehn's assessment." (R. 27). The ALJ's conjecture in this regard was "not a proper basis for ignoring a medical opinion." *Eakin v. Astrue*, 432 Fed. Appx. 607, 612 (7th Cir. 2011); *see also White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999) ("Speculation is, of course, no substitute for evidence, and a decision based on speculation is not supported by substantial evidence."). Moreover, it is not apparent, and the ALJ does not explain, why a post-DLI shoulder impairment would have impermissibly influenced Dr. Koehn's and NP Smith's assessment of Stacy's ability to do things that do not involve the use of her shoulder, such as sitting, standing, or walking.

Lastly, the ALJ reasoned that the limitations restricting Stacy to sitting or standing/walking for less than one hour during the day and to "never/rarely" lifting five to ten pounds were significantly greater than the limitations set forth in Mr. Connell's December 2014 functional assessment. (R. 27-28). This is true as Mr. Connell opined that Stacy could occasionally lift at least 14.8 pounds and could walk for up to 3 to 4 hours; stand for up to 4 hours; and sit for up to 6 hours. *Id.* at 1095. However, the ALJ did not adopt most of these restrictions (although she did adopt the six-hour sitting restriction), and as already discussed, she improperly discounted Mr. Connell's assessment. *Id.* at 21, 26-27. It is unclear why the ALJ would discount the August 2016 questionnaire based on an inconsistency with evidence which the ALJ criticized and for the most part, rejected. There may be a logical explanation for this, but the ALJ did not provide one in her decision, and the Court cannot speculate as to what it might be. *See Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) ("We limit our review to the reasons articulated by the ALJ in the written

decision."); *Reynolds v. Astrue*, 2010 WL 3981434, at *4 (S.D. Ind. Oct. 7, 2010) ("The ALJ is required to build a logical bridge from the evidence to his conclusions, and this Court cannot affirm an ALJ's decision by engaging in speculation to construct that rationale.").

Even if the ALJ permissibly gave the August 2016 questionnaire less than controlling weight based on Mr. Connell's functional assessment, she still was required to consider the applicable § 404.1527(c) factors. *Gerstner*, 879 F.3d at 263. The ALJ failed to do so. She did not, for instance, discuss or otherwise acknowledge that by August 2016, Dr. Koehn had been treating Stacy for three-and-a-half years (and maybe even longer) or that during that time, Stacy had seen Dr. Koehn close to twenty times and NP Smith five times. (R. 245, 313, 2533-2621). These facts support giving Dr. Koehn's and NP Smith's questionnaire greater weight, as does the fact that Dr. Koehn is a pain management specialist. *See* 20 C.F.R. § 404.1527(c)(2), (5).

Like Mr. Connell's and Dr. Ross's opinions, the ALJ's failure to properly assess the August 2016 questionnaire is not harmless. The questionnaire contains several limitations that, if accepted, would lead to a much more restrictive RFC determination and resulting hypothetical question to the VE, such as Stacy's inability to sit, stand, or walk for an hour during the day, her limited ability to lift and carry 5-10 pounds, her need to stand up three times every hour for 5-10 minutes and to take breaks every two hours for 10-15 minutes, the frequency with which her pain, fatigue, and symptoms interfere with her attention and concentration (up to two-thirds of a workday), and the estimated two to three absences per month. (*Compare* R. 21, 71-77 *with* R. 1383-85). Any combination of these limitations might lead to a finding that Stacy could not perform her past relevant work or other work in the economy. *See* (R. 75-76) (VE testifying that two to three absences per month would preclude past work and other work in the national economy).

In sum, the ALJ's decision to afford little weight to Dr. Koehn's and NP Smith's August 2016 questionnaire is not supported by substantial evidence and is not harmless. On remand, the ALJ should consider whether to give this questionnaire controlling weight, and if she decides not to, she must support that decision with good reasons and an accurate and logical bridge between the evidence and her decision. Such a discussion should consider and be guided by the applicable § 404.1527(c) factors. *See Gerstner*, 879 F.3d at 263; *Scrogham*, 765 F.3d at 697-98.

## B.     RFC Determination and Hypothetical Question to the VE

Stacy also contends that the ALJ's RFC determination and her hypothetical question to the VE are not supported by substantial evidence because they fail to account for her moderate limitations in concentration, persistence, or pace. Substantial evidence must support both an ALJ's RFC determination and her hypothetical question to a VE. *See Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017) (finding error where a hypothetical question was not supported by substantial evidence); *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) (finding an RFC determination inadequate because it was not supported by substantial evidence). In both assessing a claimant's RFC and posing a hypothetical question to a VE, an ALJ must account for all a claimant's limitations, including any limitations in concentration, persistence, or pace. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *Mischler v. Berryhill*, 2019 WL 1299948, at *5 (7th Cir. Mar. 20, 2019).

At step three, the ALJ evaluated the severity of Stacy's anxiety and affective disorders and determined that she experienced moderate limitations in concentration, persistence, or maintaining pace. (R. 19-20). To accommodate Stacy's symptoms of anxiety and depression, the ALJ crafted an RFC that allowed Stacy to be off task up to 10 percent of the time in an eight-hour workday. *Id.* at 21, 25. The ALJ also asked the VE about a hypothetical individual who would be off task

10 percent of the workday. *Id.* at 73. The VE testified that an individual must work at a constant basis in all of Stacy's past occupations, which is defined as up to 84 percent of the time. *Id.* at 74. Thus, being off-task 10 percent of the workday would not preclude performance of Stacy's past relevant work. *Id.* at 73-74.

The 10 percent off-task accommodation, however, is not supported by substantial evidence. In fact, neither the ALJ nor the Commissioner identifies any evidence from the record that quantifies the amount of time Stacy was rendered off task by her moderate limitations in concentration, persistence, or pace, let alone evidence translating moderate limitations into being off task 10 percent of the workday. (R. 25). Instead, the ALJ appears to have developed her own opinion regarding Stacy's off-task time. That is impermissible. *See Lanigan*, 865 F.3d at 563 (finding a 10 percent off-task limitation unsupported by substantial evidence where the ALJ did not explain the source of the figure or "establish a logical connection between the evidence" and the figure).

Indeed, the amount of time Stacy is off task due to her symptoms of anxiety and depression, including difficulties with concentration, persistence, or pace, could affect the ALJ's non-disability ruling. The ALJ ruled that Stacy was not disabled because she could have performed her past relevant work as a bank teller, head teller, or personal banker. (R. 28-29). The VE testified that an individual working in one of these positions would be terminated if she was off-task more than 15 percent of the workday. *Id.* at 74-75. A more than 15% calculation may be supported by Dr. Koehn and NP Smith, who opined that Stacy's pain, fatigue, or other symptoms interfere with her attention and concentration from 33 percent to 66 percent of an eight-hour workday. (R. 1384-85). Thus, if Stacy's symptoms of anxiety and depression, including moderate limitations in concentration,

persistence, or pace, render her off-task more than 15 percent of the workday, she would be unable to perform her past relevant work.

On remand, the ALJ shall explain how her RFC determination and hypothetical question to the VE accommodate Stacy's symptoms of anxiety and depression, including her moderate limitations in concentration, persistence, or pace. If the ALJ determines that a certain percentage of off-task time adequately accommodates these limitations, the ALJ must "establish a logical connection between the evidence" and that percentage. *See Lanigan*, 865 F.3d at 563.

## C. Other Issues on Remand

Because a remand is warranted on the above grounds, the Court need not reach Stacy's remaining arguments. However, to provide additional guidance on remand, the Court provides the following instructions and observations.

First, the ALJ shall evaluate each acceptable and non-acceptable medical opinion in the record, including those not discussed by the Court in this opinion, pursuant to the factors set forth in 20 C.F.R. § 404.1527(c). In doing so, the ALJ should also consider whether the state agency consultants' opinions are based on a review of all the relevant evidence in the record and, if not, the ALJ should recognize the potential limitations of such opinions. *See Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) ("An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion."); *see also Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (criticizing an ALJ's "uncritical acceptance" of opinions from non-examining physicians who had not reviewed "new and potentially decisive medical evidence"). Finally, on remand, if the ALJ decides to give partial weight to an opinion, the ALJ shall specifically identify which portions of the opinion she credits, which portions she rejects, and why.

Second, the ALJ should take the opportunity on remand to reevaluate Stacy's subjective symptom allegations in accordance with SSR 16-3p and 20 C.F.R. § 404.1529.  The ALJ should sufficiently articulate how she evaluates the evidence and then provide a logical bridge from the evidence to her conclusions regarding the Stacy's subjective symptom allegations.  The ALJ should include in her RFC assessment any additional restrictions that she finds to be "supported by the medical evidence and that [she finds] to be credible." *Outlaw v. Astrue*, 412 Fed. Appx. 894, 898 (7th Cir. 2011).

### III. CONCLUSION

For the reasons and to the extent stated herein, Stacy A.'s Motion for Summary Judgment [15] is granted.  Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed and this case is remanded to the Social Security Administration for further proceedings consistent with this Opinion.  The Clerk is directed to enter judgment in favor of Plaintiff Stacy A. and against Defendant Commissioner of Social Security.

**SO ORDERED.**

Dated:  April 18, 2019          _____
                                Sunil R. Harjani
                                United States Magistrate Judge

22